**Denied and Opinion Filed February 2, 2021**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00983-CV**

**IN RE C.D.C., Relator**

**Original Proceeding from the 439th Judicial District Court**
**Rockwall County, Texas**
**Trial Court Cause No. 1-15-698**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Carlyle, and Garcia
Opinion by Justice Carlyle

Relator father asks us to order the trial court to vacate its temporary orders naming maternal grandparents and mother as temporary joint managing conservators of the child. The temporary orders also name him temporary joint managing conservator and, notably, give him, for the first time, the power to designate the child's residence. We deny mandamus relief and deny the motion for emergency stay as moot.

LEGAL PRINCIPLES

Entitlement to mandamus relief requires relator to demonstrate that the trial court has clearly abused its discretion and that he has no adequate appellate remedy.

*In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). Father has no adequate appellate remedy because temporary orders in a SAPCR are not appealable. *See* TEX. FAM. CODE § 105.001(e); *see also* TEX. CIV. PRAC. & REM. CODE § 51.014. Whether the trial court clearly abused its discretion presents the only difficult question in this proceeding. *See In re C.J.C.*, 603 S.W.3d 804, 811 & nn.25–27 (Tex. 2020) (orig. proceeding).

A court abuses its discretion when it acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In determining whether to grant mandamus relief, we defer to the trial court's factual determinations when supported by the record. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). That said, the trial court abuses its discretion when it fails to correctly analyze or apply the law even when the law is unsettled. *Id.* at 840; *C.J.C.*, 603 S.W.3d at 811.

Father contends the supreme court's recent decision in *C.J.C.* compels us to conclude the trial court abused its discretion because no evidence rebuts the "fit-parent presumption." The fit-parent presumption *C.J.C.* recognizes means that parents enjoy a presumption that they are fit and able to make decisions regarding their children unfettered by government intrusion. 603 S.W.3d at 808. But as the dissent recognizes, *C.J.C.* fails to offer guidance on the quantum of evidence necessary to overcome the presumption. We are presented with the question whether

mandamus should issue based on the trial court's weighing of evidence to rebut a presumption in the law. Based on our review of the record here, we conclude the trial court did not abuse its discretion in weighing the evidence before it.[1]

ANALYSIS

The trial court initially entered a March 2016 order appointing father and mother joint managing conservators of the child and giving mother the exclusive right to determine the child's residence. After grandparents filed an interstitial modification petition, to which father counter-petitioned, both parties nonsuited. Father petitioned for the present modification in May 2020. Grandparents, with whom the child has primarily lived since birth in 2014, and with whom mother directed that the child live for at least the six months before May 2020, sought to intervene some two weeks later. *See* TEX. FAM. CODE § 102.003(a)(9). Grandparents sought to be appointed either sole managing conservators or joint managing conservators with the exclusive right to designate the child's residence, alleging that father and mother neglected the child.

After an August 2020 temporary orders hearing, the court named mother, father, and grandparents temporary joint managing conservators based in part on mother's stipulation that she would have no visitation without grandparents' supervision and over father's objection to grandparents obtaining rights. The court

---

[1] We implicitly reject the dissent's premise that no evidence rebuts the fit-parent presumption.

also allotted father possession on the first, third, and fifth weekends, subject to additional drug testing to prove father's contention that he had stopped using drugs.

Father submitted two clean drug tests as specified by the court, and in October 2020, the court issued new temporary orders, continuing to appoint father, mother, and grandparents temporary joint managing conservators but giving father the exclusive right to determine the child's residence and taking that right from mother. These orders gave mother possession supervised by grandparents and granted grandparents standard periods of possession.

Mother lived with her parents, grandparents here, when the child was born in 2014. Throughout mother's ongoing, and father's hopefully temporary, struggles with drug addiction, grandparents have been the child's primary parenting figures in the household in which she resided. Mother admits she is not currently a fit parent. It appears the child now lives with father, pursuant to the order father complains of now.

Father admits a period of drug use—at least during the first three years of the child's life, including before and after the court entered the original March 2016 order—that led to no small amount of criminal behavior, including a protective order against a woman in Colorado he claims no memory of due to his drug use at the time. He admits criminal convictions for drug possession. He admits he spent time in jail for his drug-driven behavior and that he engaged in wide-ranging criminal activity in Florida, Texas, and Colorado. Father presented significant evidence that he had

turned his life around, no longer used drugs, and retained stable employment and housing near Houston. Yet, father confirmed grandparents' allegations that he, along with mother, acquiesced in grandparents housing and primarily caring for the child for nearly all the child's life.

Father's first unsupervised extended possession occurred when the child was approximately 4 years old. After that, he saw the child unsupervised for spring break and two extended fall weekends when the child was about 5, and for spring break again when the child was about 6. The rest of father's visits with the child were supervised by the child's paternal grandparents, and in the presence of a large extended family. The trial court observed at the August hearing that the parties' relationship appeared to have broken down, leading to unnecessary difficulties in the child seeing all parts of the family.

Though *C.J.C.* provides the starting point of the legal discussion here—that parents enjoy the presumption that they are fit and are able to make decisions regarding their children unfettered by government intrusion—it does not provide for only one conclusion based on the evidence before the trial court and does not provide guidance on the quantum of evidence necessary to overcome the presumption. *See C.J.C.*, 603 S.W.3d at 814.[2] The trial court expressed its awareness of the fit-parent

---

[2] Father also relies on *Troxel v. Granville*, 530 U.S. 57 (2000), to establish that the trial court was required to exclude the grandparents—the child's primary caregivers for most of the child's life—simply because he has recently put the appropriate pieces of his life together. *Troxel* gives insight into what a fit parent might or might not be: "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *Id.* at 68. But the

presumption, the record contains evidence supporting its factual determinations, and those factual determinations can legally support its conclusion that the fit-parent presumption was rebutted; this is not a situation where the trial court substituted its judgment for a fit parent's judgment.[3] *Cf. id.* at 815–16; *In re B.F.*, No. 02-20-00283-CV, 2020 WL 6074108, at *3–4 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (orig. proceeding, mem. op.) (locating no record evidence supporting father's unfitness). Thus, we decline the invitation to substitute our judgment for that of the trial court and find no abuse of discretion.

Father also complains that the trial court abused its discretion by appointing mother, who admits to being an unfit parent, a joint managing conservator. Under the original order father sought to modify by the chapter 156 petition here, only mother and father were joint managing conservators, and mother had the right to determine the child's residence. Mother chose grandparents' home as the child's

---

record provides support for a conclusion that father has not consistently and adequately cared for his child and thus *Troxel* does not mandate a particular conclusion here, alone or in concert with *C.J.C.*

We note also that *Troxel* and *C.J.C.* arose from factual scenarios similar to one another, where non-parent parties seeking custody did not allege unfit parents. In contrast, grandparents here allege father is unfit and some evidence supports that allegation.

[3] Of note, the trial court stated:

> You know, this really is an unfortunate situation that the court sees time
> and time again. And that is, first of all, that the young parents that have a
> drug use and grandparents having to step up and take the role of parents,
> when obviously they've already done that. They don't need to do it again,
> but they have. They have done so in the past, and did so in this case.

That said, the trial court admonished grandparents for certain behavior in the litigation, including "mouthing off in court" and "not trying to work out visitation . . . [or] phone calls" with the child. The court expressed frustration with the parties' inability to work out a solution in the child's best interest.

residence and relinquished significant parental duties to them. Father acquiesced in this relinquishment for most of the child's life.

But the temporary orders father complains of here strip mother of most rights she previously possessed. She has lost the right to determine the child's residence and the right to even visit with the child without the supervision of grandparents. A parent conceding she is not presently fit is not a concession that leads inevitably to court orders depriving her of any parental rights. And in any event, in his First Amended Petition to Modify Parent-Child Relationship, father requested as alternative relief exactly what the court ordered and what he complains of now: that mother's "periods of possession of and access to the child . . . be supervised at all times by an entity or person ordered by the Court." We do not find an abuse of discretion in the trial court's ongoing management of the child's best interests.

We commend father on his progress and take note of the trial court's thoughtful willingness to reintegrate father into the child's life in lieu of the child being raised by grandparents, who at the hearing conceded they did not desire to raise the child permanently. But the law does not provide a basis for mandamus relief based on the trial court's factual determination and application of the law to that determination. *See C.J.C.*, 603 S.W.3d at 808, 815–16. Accordingly, we deny the petition for writ of mandamus, TEX. R. APP. P. 52.8(a), and deny relator's motion for

–7–

an emergency stay as moot.

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

Pedersen, III, J., dissenting

200983F.P05